UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILLIP JACOBS,<br><br>                Plaintiff,<br><br>  -against-<br><br>THE CITY OF NEW YORK; NEW YORK CITY POLICE DEPARTMENT; P.O. ALFRED MALDONADO, SHIELD # 7409, 44 PRECINCT; POLICE OFFICERS JOHN DOE 1 – 10, SHIELD NUMBERS UNKNOWN.<br><br>                Defendants. | **COMPLAINT WITH JURY DEMAND** |

Plaintiff, by and through his attorney, Steven Goldman at the Law Offices of Goldman & Associates, for his Complaint makes the following allegations:

## PARTIES

1. Plaintiff Phillip Jacobs is a 28-year-old man who is lives in the borough of the Bronx, city and state of New York.

2. Defendant City of New York is a municipal corporation duly organized under the laws of the State of New York.

3. Defendant Police Officer Alfred Maldonado and Police Officers "John Does" 1-10 are or were at the time of this incident on July 24, 2019, employees and/or agents of the NYPD and the City of New York. The names of the John Doe Defendants are unknown to Plaintiff Phillip Jacobs but are known to the NYPD. Each of them is being sued in both their individual and official capacities.

1

## JURISDICTION AND VENUE

4. This action arises under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§ 1983 and 1988.

5. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

6. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the defendants reside in this District and because the events giving rise to the claims occurred in this District.

7. This action was commenced within the three-year statute of limitations applicable to federal civil rights actions brought pursuant to 42 U.S.C. § 1983.

## JURY DEMAND

8. Plaintiffs demand trial by jury.

## FACTUAL ALLEGATIONS

9. At the time of this incident, Phillip Jacobs [hereinafter "Phillip"] was employed doing maintenance at Alliance Maintenance in Manhattan.

10. Because Phillip did not have to go to work on July 24, 2019, he decided to travel to his old neighborhood On Sherman Avenue between 163 and 164 Streets in the Bronx to visit some friends and family who still lived there. He arrived at the location around 8:30pm or 9pm.

11. The first person he met when he arrived at the location was a woman named Marquisha Carrol [hereinafter "Marquisha"], an old and close friend of his. Marquisha had her 3-year-old daughter with her.

12. Marquisha and Phillip noticed a group of police officers gathered nearby. Marquisha asked Phillip to watch her daughter while she went to see why the police were in her neighborhood. When she returned a few minutes later, she took her daughter and dropped her off at a neighbor's house, then rejoined Phillip.

13. Marquisha informed Phillip that someone on the block had been shot and that the police were looking for the perpetrator.

14. Phillip noticed that his Aunt, Felicia Aidoo [hereinafter "Aunt Felicia"] was speaking with some police officers. Phillip heard one of the officers tell Aunt Felicia to "Shut the fuck up bitch."

15. At the time there were about eleven officers in the immediate vicinity of Phillip, with two officers in the front of the group located closest to him.

16. Phillip took a couple of steps toward the officer who had just addressed his Aunt Felicia and told him that the older woman he had just cursed was his Aunt, who deserved some respect, and the officer shouldn't treat her so disrespectfully. By way of response, the officer said to Phillip, "Mind your own business and shut the fuck up."

17. Phillip responded that he (the officer) was angry simply because he wasn't able to apprehend the perpetrator of the shooting. Rather than disrespecting women like his Aunt, Phillip suggested that the officer do his job and find the perpetrator.

18. The officer replied that since Phillip seemed to know about the shooting, he should tell the officer the name of the perpetrator. Phillip responded that it was the officer's job to identify and arrest the perpetrator, not his, and that in any event, he had just arrived on the block and had no idea who did the shooting.

3

19. The officer asked Phillip to repeat what he had just said, which Phillip began to do. Before he could finish, however, the officer used both his hands to violently push Phillip in the chest, causing Phillip to stumble backward and nearly fall to the ground.

20. At this point there were about eleven officers in the immediate vicinity of where Phillip was standing, with additional officers just up the street. The officer who was speaking to Phillip and one other officer were in the front of that group.

21. When Phillip regained his balance, the officer who pushed him, together with his fellow officers, walked menacingly toward him. Upon reached Phillip, the same officer again used both hands to violently push him in the chest, causing him to once more stumble backward and almost fall.

22. When the officers reached Phillip a third time, the same officer who pushed him twice began to push him a third time. As he did so Phillip briefly tried to prevent himself from being pushed again. The officer who had pushed him three times, together with the other officers, suddenly rushed Phillip and shoved him against a nearby building. Phillip stumbled backward under the sheer weight and momentum of the group of officers who were now upon him and was quickly dragged to the ground.

23. Once on the ground, the group of officers began to viciously attack him. Phillip tried to ask the officers why he was being arrested, but his question was answered with a flurry of punches from the officers who were now collectively assaulting him.

24. He was attacked by an undifferentiated mass of fists, shoes, elbows and knees. The officers were not subduing him so that he could be arrested. Rather, they were gratuitously and grievously beating him.

25. After he was dragged to the ground, one officer kneeled down near where he was laying and repeatedly kneed him in the legs, while another kicked and elbowed him in the back over and over. The punches and kicks came from all directions and landed the length and breadth of his body.

26. It was impossible for Phillip to protect himself from the mass of blows he was receiving. He had no choice but to submit to their rage and permit the beating that they were viciously perpetrating upon him.

27. The beating was both brutal and sustained. If any of the ten plus officers who were present at the scene did not participate in the beating, it was only because the officers who were beating Phillip blocked their fellow officer's access to his body with their own bodies. It was like an urban re-creation of a scene on a prairie where a group of hyenas' jostle with each other to pick clean the bones of an animal they are feasting upon.

28. On the date of the incident, Phillip was 5'5" and approximately 140 pounds. All of the officers who were beating Phillip were significantly taller and heavier than he was, not to mention armed with multiple weapons.

29. When the officers had their fill of beating him, Phillip was lifted up and marched toward an RMP. Before reaching the RMP, however, an officer gratuitously slammed him to the ground a second time.

30. He was initially taken to the precinct, but due to his injuries and the significant pain he was experiencing, the officers were compelled to transport him to Lincoln hospital for treatment.

31. Phillip was eventually charged with resisting arrest, obstructing governmental administration, menacing and disorderly conduct. All of the charges save one

were misdemeanors, while the remaining charge was a violation. He was not charged with any substantive crimes, including assault upon the officers or anyone else.

32. After spending almost two days in custody, he was arraigned and released without bail.

33. Phillip attended several court dates. The charges were all dismissed upon motion of the People on January 4, 2021.

34. Phillip was in enormous pain throughout his body for days, weeks, even months as a result of this unprovoked and illegal attack.

35. When he was seen by a doctor on August 2, 2019, nine days after the incident, he required help getting off the examination table. *Physical Medicine and Rehabilitation of New York (PMRNY) P22*. His bodily movement was compromised in most every way. The clinical "impression" of the treating physician was as follows: "This is a 25-year-old male status post assault injury with injuries to the cervical spine, thoracic spine, right shoulder, left elbow, left wrist, right knee, left knee, cervical spine and thoracic spine." *PMRNY P11*.

36. An MRI performed on August 24, 2019, a month after the incident, indicated bulges at the C4/5, C5/6, C6/7, and C7/T1 discs. *PMRNY P31*.

37. When he followed-up with a doctor on November 15, 2019, almost four months after the attack, the clinical "impression" included the following: "This patient is a 25-year-old male status post personal injury accident on July 24, 2019 with subsequent cervical myofascial derangement, cervical disc displacement with associated disc bulges and disc herniations, right shoulder derangement and right knee contusion with ACL sprain." *PMRNY P18*. In the "causality" section on the following page, the doctor concluded that "there is a direct

6

causal relationship between the above-stated accident [on July 24, 2019] and today's pathological findings." *PMRNY P19*.

*38.* When he went for a follow-up doctor appointment on November 26, 2019, over four months after the attack, he was still experiencing significant pain in his neck, upper back, both elbows, left wrist, right shoulder, and both knees. *PMRNY P11*.

39. Because he was struggling emotionally as a result of the attack upon him by the police, he sought help at NY Psychotherapy and Counseling Center (NYPCC). He reported that he was having trouble sleeping, and experienced anxiety whenever he heard police sirens. As a consequence, "[r]ecipient reported he drinks alcohol until 'I don't feel pain, I'm mellow.' Recipient reported he's referring to his body pain after being assaulted. Recipient reported he started to drink alcohol after 7/2019." NYPCC P9.

40. Phillip has incurred a variety of costs over a significant period of time as a result of this attack. Those costs included legal, medical and mental health bills. Indeed, since the medical and psychological consequences of the attack have not yet ended, neither have the bills.

41. Because he was still in jail the day following his arrest, a day he was expected at work, he was terminated from Alliance Maintenance.

42. Because of injuries he sustained during the attack, and because he earned his living doing manual labor, he was unable to return to the work world for six to eight months after the beating.

43. The illegal beating inflicted upon him on July 24, 2019, by members of the NYPD, resulted in serious and enduring damage to him. As a result of the beating and attendant injuries, Phillip is diminished financially, physically and emotionally.

## FIRST COUNT
## 42 U.S.C. § 1983 - FALSE ARREST

44. Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 43 of this Complaint with the same force and effect as though fully set forth herein.

45. Any accusations of wrongful conduct against Plaintiff were improper and false, and were made in an attempt to disguise and cover-up the Defendants New York City, NYPD, Police Officer Maldonado, and Police Officer John Does 1-10 wrongful conduct towards Plaintiff, causing a deprivation of his rights, privileges, and/or immunities secured by the Constitution and laws.

46. Said wrongful conduct constituted a violation of Plaintiff's rights, secured by the Fourth Amendment to the United States Constitution, to be free from unreasonable searches and seizures. Such actions were intentional, negligent, reckless, unreasonable and unauthorized, as Defendants had a duty to not subject Plaintiff to vicious beatings, false arrest, false imprisonment, wrongful institutionalization, forced jailing in the police station and central booking, denial of the right to move freely, hospitalization and summary punishment, but failed to prevent same, thereby breaching their duty.  In doing so, the Defendants violated clearly established law and the rights to which Mr. Jacobs was entitled, and did so with recklessness, callous indifference to the outcome of their actions and with malice, all in violation of 42 U.S.C. § 1983.

47. As a consequence of Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiff was deprived of his freedom, was made to suffer physical injuries, great pain and suffering, and was subjected to loss

of esteem, terror, personal humiliation and degradation, and continues to suffer physical pain and mental and emotional distress as a result of the aforesaid unlawful conduct of the Defendants.

48. That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## SECOND COUNT
## 42 U.S.C. § 1983 - EXCESSIVE USE OF FORCE

49. Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 48 of this Complaint with the same force and effect as though fully set forth herein.

50. Plaintiff was never convicted of engaging in illegal conduct, nor did he ever engage in illegal conduct, and the Defendants' wrongful conduct illustrated their predisposition to abuse and assault the Plaintiff, causing serious and permanent injury.

51. The vicious beating of Plaintiff by Defendants New York City, NYPD, Police Officer Maldonado, and Police Officer John Does 1-10 constituted unreasonable and excessive force by a police officer, as well as abuse of process. Such actions were negligent, reckless, careless, unreasonable and unauthorized, as Defendants had a duty not to subject Plaintiff to vicious and abusive police actions and false arrest, but failed to prevent same and thereby breached their duty. This summary punishment and wrongful seizure was in violation of the rights promised to Plaintiff under the 4th, 5th, and 14th Amendments to the United States Constitution.   In doing so, the Defendants violated clearly established law and the rights to which Mr. Jacobs was entitled and did so with recklessness, callous indifference to the outcome of their actions and with malice, all in violation of 42 U.S.C. § 1983.

52. As a consequence of Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiff was deprived of his freedom, was made to suffer physical injuries, great pain and suffering, and was subjected to terror, personal humiliation and degradation, and continues to suffer physical pain and mental and emotional distress as a result of the aforesaid unlawful conduct of the Defendants.

53. That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## THIRD COUNT
## 42 U.S.C. § 1983 - FALSE IMPRISONMENT

54. Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 53 of this Complaint with the same force and effect as though fully set forth herein.

55. Any accusations of wrongful conduct against Plaintiff were improper and false, and were an attempt to disguise and cover-up the Defendants New York City, NYPD, Police Officer Maldonado, and Police Officer John Does 1-10 wrongful conduct towards the Plaintiff, causing a deprivation of his rights, privileges, and/or immunities secured by the Constitution and laws.

56. The Defendants New York City, NYPD, Police Officer Maldonado, and Police Officer John Does 1-10 lacked probable cause to seize, arrest or detain Plaintiff in prolonged physical custody.

57. The vicious beating, false arrest, false imprisonment, wrongful institutionalization, forced hospitalization and summary punishment against the Plaintiff by the Defendants were committed under color of the law.

58. The Defendants acted under color of law to deny the Plaintiff his Fourth, Fifth, and Fourteenth Amendment rights to protection from unlawful search and seizure, equal protection, and due process by falsely arresting, wrongfully detaining, unlawfully and falsely arresting and detaining the Plaintiff, for which there was no evidence or substantiation of any kind. In doing so, the Defendants violated clearly established law and rights to which Mr. Jacobs was entitled. Moreover, they did so with recklessness, with callous indifference to the outcome of their actions and with malice, all in violation of 42 U.S.C. § 1983.

59. As a consequence of Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiff was deprived of his freedom, was made to suffer physical injuries, great pain and suffering, and was subjected to terror, personal humiliation and degradation, and continues to suffer physical pain and mental and emotional distress as a result of the aforesaid unlawful conduct of the Defendants.

60. By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

WHEREFORE Plaintiff demands judgment against Defendants:

a. on the First Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS;

  b.  on the Second Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS;

  c.  on the Third Count in the sum of FIVE MILLION ($5,000,000.00) DOLLARS;

  d.  Punitive damages in the amount of FIVE MILLION ($5,000,000) DOLLARS;

  e.  Award reasonable attorney's fees and costs of this action to the Plaintiffs pursuant to 42 U.S.C. § 1988;

  f.  Declaratory Judgment that defendants willfully violated plaintiffs' rights secured by federal and state law as alleged herein;

  g.  Award such other and further relief as this Court may deem appropriate.


Dated: Bronx, New York

July 5, 2022

            LAW OFFICES OF GOLDMAN & ASSOCIATES


            By:  /S/
               Steven Goldman
               190 East 161st Street, Suite 100
               Bronx, New York 10451
               (718) 538-5743

            *Attorney for Plaintiff Phillip Jacobs*